Filed
D.C. Superior Court
09/28/2016 15:29PM
Clerk of the Court

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

MONIQUE WILLIAMS,                                )
Individually and as Mother and Personal          )
Representative of the Estate of H.W., Deceased   )
1339 Stevens Road, S.E.                           )
Washington, DC  20020                             )
                                                  )
     Plaintiff,                                 )
                                                  )
     v.                                         )
                                                  )  Case No: 2016 CA 007219 M
UNITED STATES OF AMERICA                          )
                                                  )
Serve: Department of Health and Human Services   )
     Office of General Counsel                 )
     General Law Division, Claims and          )
     Employment Branch                         )
     330 C Street, S.W.                        )
     Switzer Building, Suite 2600              )
     Washington, DC  20201                     )
                                                  )
     and                                        )
                                                  )
     Loretta E. Lynch                          )
     Attorney General of the United States     )
     U.S. Department of Justice                )
     950 Pennsylvania Avenue, N.W.             )
     Washington, DC  20530                     )
                                                  )
     and                                        )
                                                  )
CHILDREN'S NATIONAL MEDICAL CENTER               )
111 Michigan Avenue, N.W.                         )
Washington, DC  20010                             )
                                                  )
Serve: Registered Agent                           )
     CT Corporation System                     )
     1015 15th Street, N.W., # 1000            )
     Washington, DC  20005                     )
                                                  )
     Defendants.                                )

## COMPLAINT

COMES NOW the Plaintiff, Monique Williams, individually and as Personal

Representative of the Estate of her son, H.W., deceased, by and through counsel, Karen E.

Evans, Esq. and The Cochran Firm, and files this Complaint and moves this Honorable Court for

judgment against Defendants, United States of America and Children's National Medical Center,

jointly and severally, and alleges as follows in support of her claims:

## INTRODUCTION

1.      This civil action arises out of the negligent medical care provided to 17 year old

H.W. by nurse practitioners and physicians working in the employment of the United States of

America (USA) at Unity Health Care, Inc. ("Unity"). The following Unity healthcare providers

provided care and treatment to Plaintiff's decedent, H.W., at the listed Unity clinics on the dates

noted:

  a. Abayomi Hendje, M.D. on October 6, 2010 at Unity Clinic known as "East of the
     River Health Center;"

  b. Nurse Practitioner Andre Douglas on July 23, 2012 at Unity Health Care Clinic at
     Woodson Student Health Center;

  c. Nurse Practitioner Aima Payton on: August 14, 2012; October 10, 2012; March
     19, 2013; January 30, 2014; March 18, 2014; May 5, 2014; and September 10,
     2014 at Unity Health Clinic at Eastern Student Health Center; and

  d. Nurse Practitioner Alicia Baker on September 19, 2014 at Unity Health Care
     Clinic at Eastern Student Health Center.

2.      The failure of these named healthcare providers to order appropriate tests for

2

sexually transmitted diseases, including HIV and syphilis, violated accepted standards of medical care. On September 21, 2014, H.W.'s condition deteriorated and continued to worsen until he died on October 5, 2014 of neuro-syphilis and acute HIV infection. If his healthcare providers at Unity Health Care, Inc. had complied with the standard of care by ordering the appropriate sexually transmitted disease testing for HIV and syphilis, his infections would have been diagnosed and treated in a timely manner and his premature death prevented.

3.      This civil action arises from the negligent medical conduct of Defendant Children's National Medical Center ("CNMC") which employed the physicians, nurses and other healthcare providers and employees who provided care to H.W. when he presented to the emergency room more than five (5) times seeking medical help. The CNMC Emergency Room at United Medical Center ("CNMC ER") healthcare providers include, but are not limited to:

   a. Dr. Moshen Saidinejad and Dr. Sephora Morrison on May 17, 2014;

   b. Dr. James F. Martin and Dr. Eiman Abdulfahman on September 21, 2014;

   c. Dr. Moshen Saidinejad on September 29, 2014;

   d. Dr. Alexandra Rucker on September 23, 2014;

   e. Dr. Joanna Susan Cohen and Dr. Rajesh Kirit Daftary on September 30, 2014; and

   f. Dr. Robert Feltner on October 3, 2014, prior to approximately 8:00 p.m. re-evaluation.

   g. On each occasion, H.W. was not admitted for further evaluation, and was negligently discharged home and/or planned to be discharged home by CNMC ER employees.

4.      As a result of the Defendant's negligent failure to diagnose and treat H.W., he

3

suffered conscious pain and suffering, incurred funeral expenses and financial losses, including future lost wages, loss of earning capacity, reasonable and necessary medical and hospital expenses, and is entitled to receive reasonable compensation for bodily injuries, mental anguish, disabilities, disfigurement and/or deformities and inconvenience and discomfort H.W. experienced between the time of the injury and the time of his death, and any interest.  As a result of the death of H.W., Monique Williams and H.W.'s next of kin have lost the financial support and services that H.W. would have provided, and incurred the expenses of H.W.'s last illness, including medical, nursing, hospital bills, funeral expenses and other expenses of H.W. , and any interest.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over Defendant Children's National Medical Center (CNMC) pursuant to D.C. Code § 11-921 (2001), D.C. Code § 13-422, D.C. Code § 13-423; D.C. Code § 16-2701 and D.C. Code § 12-101.

6.      This Court is a proper venue, because this is where the alleged negligent acts occurred and where the Plaintiff resides.

7.      Plaintiff Monique Williams provided notice of her claims to the United States of America by timely filing an administrative claim within two years of the death of H.W.

8.      Plaintiff Monique Williams complied with the provisions of the District of Columbia Medical Malpractice Statute, D.C. Code § 16-2801 et. seq. and provided timely notice of her intent to sue to Children's National Medical Center and its employees and agents.

9.      Upon receipt of an administrative claim letter denying this claim or the passage of six (6) months from notice of claim to the USA, Plaintiff Monique Williams will have thus

4

satisfied all prerequisites to the maintenance of this lawsuit.

10.     Jurisdiction is invoked over Defendant Children's National Medical Center
pursuant to D.C. Code §§ 11-921, 13-422, and 13-423 and venue is vested in this Honorable
Court because the Plaintiff resides in the District of Columbia, the Defendants do business in the
District of Columbia and the healthcare at issue occurred in the District of Columbia.

## PARTIES

11.     Plaintiff Monique Williams is of full age, a citizen of the United States, a resident
of the District of Columbia and has applied to become the Personal Representative of the Estate
of her son, H.W., Deceased.

12.     At all times relevant, Defendant United States of America (USA) operated Unity
Health Care, Inc. known as "East of the River Health Center"; Woodson Student Health Center;
and Unity Health Clinic at Eastern Student Health Center.

13.     At all times relevant, Defendant USA acting individually and through its
employees, and/or real, apparent and ostensible agents, including but not limited to: Nurse
Practitioner Andre Douglas, Nurse Practitioner Aima Payton, Nurse Practitioner Alicia Baker,
and Abayomi Hendje, M.D. (hereinafter "Unity Defendants") had a duty to and negligently
failed to order the appropriate sexually transmitted disease (STD) testing including HIV and
syphilis testing for a teenage African American male in Washington, DC, who came to
Defendant USA for STD testing and reported he was engaged in high risk sexual activity.

14.     These actions and inactions by the "Unity Defendants" were taken within the
scope of their employment and agency, such that Defendant USA is liable for H.W.'s death and
damages resulting from this negligence.

5

15. At all times relevant, Defendant Children's National Medical Center ("CNMC") employed the physicians, nurses and other healthcare providers who provided care to H.W. when he presented to the Emergency Room at United Medical Center ("CNMC ER") more than five (5) times seeking medical help.

16. On each occasion about and between May 17, 2014 and October 3, 2014 before 8:00 p.m., H.W. was not admitted for further evaluation and was negligently discharged home and/or planned to be discharged home by CNMC ER employees.

17. H.W. presented to Defendant CNMC for the final time on October 3 and 4, 2014, and died on October 5, 2014 because Defendant CNMC and Defendant USA failed to timely diagnose and treat H.W., which was a proximate cause of H.W.'s death from neuro-syphilis and acute HIV infection.

18. These actions and inactions of the Defendants USA and CNMC, acting individually and through their agents and employees were taken within the scope of their employment and agency, such that Defendants CNMC and USA are liable for the death of H.W. and the damages resulting from their negligence.

## FACTS

19. H.W. was thirteen (13) years old when he was seen at the Unity Health Care Clinic at East of the River Health Center, where he was evaluated by Dr. Abayomi Hendje, M.D. on October 6, 2010 for evaluation of urinary frequency, dysuria, and blood-tinged urine. H.W.'s sexual history was documented as not having had sex within the past 12 months. Dr. Hendje examined H.W.'s penis and documented no discharge; he also examined H.W.'s testicles and noted no testicular pain or edema. Dr. Abayomi Hendje, M.D. also tested H.W.'s urine for

6

*chlamydia trachomatis* and *neisseria gonorrhea* on this date, both of which were negative. Dr. Hendje diagnosed H.W. with a urinary tract infection and prescribed oral antibiotics on this date.

20.     On July 23, 2012, H.W., who was in high school and was fifteen (15) years old, presented to the Unity Health Care Clinic at the Woodson Student Health Center, specifically requesting "STD testing" (for sexually transmitted diseases).  On this date, he was evaluated by Nurse Practitioner Andre Douglas.  H.W.'s sexual history revealed that he had been sexually active within the past twelve (12) months, and that his sexual partners were female.  However, Nurse Practitioner Andre Douglas did not document H.W.'s number of lifetime sexual partners and did not record his number of sexual partners in the past twelve months.

21.     On July 23, 2014, although H.W. was sexually active and was presenting for STD testing, Nurse Practitioner Andre Douglas did not document any examination of H.W.'s genitals on July 23, 2012.

22.     On July 23, 2012, Andre Douglas, NP, performed a Rapid HIV Orasure swab test, which was negative.  He also sent a sample of H.W.'s urine to test for *Chlamydia trachomatis* (hereinafter "Chlamydia") and for *Neisseria gonorrhea* (hereinafter "Gonorrhea"), both of which returned negative.

23.     Sexuality education, including education regarding sexually transmitted diseases (hereinafter "STD's") and sexual identity and behavior was documented as having been conveyed to H.W. during this July 23, 2012 Unity Health Care Clinic visit with Nurse Practitioner Andre Douglas.

24.     On August 14, 2012, H.W. presented to the Unity Health Care Clinic at Eastern

7

Student Health Center for a "Peds New Patient" visit and a sports physical. On this date he was evaluated by Nurse Practitioner Aima Payton (hereinafter "NP Payton"). NP Payton documented that H.W. was sexually active and that his sexual partners were female. She also documented that H.W. had a total of five lifetime sexual partners as of this date.

25.     On March 19, 2013, H.W. returned to see NP Payton at the Unity Health Care clinic at Eastern Student Health Center for a complaint of sore throat for two days with painful swallowing. His sexual history was updated on this date; and for the first time H.W.'s sexual partners were now described as "Male."

26.     On March 19, 2013, despite H.W.'s then current sexual history status of being a young male having sex with males ("YMSM"), NP Payton did not document pertinent sexual history questions including further regarding types of sexual activities; total number of lifetime sexual partners; or the number of sexual partners in the past twelve months.

27.     The applicable Centers for Disease Control and Prevention (CDC) 2010 Guidelines regarding YMSM state that young males having sex with male partners require Sexually Transmitted Infection (STI) testing for Chlamydia, Gonorrhea, HIV and syphilis at least annually, and at times more frequently than annually.

28.     NP Payton did not recommend nor order any STI testing on H.W. on March 19, 2013.

29.     On January 30, 2014, H.W. presented again to the Unity Health Care clinic and was evaluated by NP Payton for a physical examination for sports participation. H.W.'s sexual history was updated by NP Payton and revealed that his sexual partners were still male; that the number of his sexual partners in the past twelve months was one. NP Payton ordered certain

8

blood work to be performed on this date: a CBC and BMP. However, NP Payton did not recommend, nor did she order, that H.W. be tested for syphilis on this date.

30.     On March 18, 2014, H.W. returned to see NP Payton again at the Unity Health Care clinic for complaints of a headache. His sexual history was not changed and NP Payton did not recommend or order STI testing including testing for HIV or syphilis for H.W.

31.     On May 5, 2014, H.W. returned again to see NP Payton at the Unity Health Care clinic for complaints of left arm pain. No change in his sexual history was noted and NP Payton did not recommend nor order any STI testing on H.W. on this date, including HIV or syphilis testing.

32.     On May 17, 2014, 17 year-old H.W. was taken to the Children's National Medical Center ER (hereinafter "CNMC ER") at United Medical Center via ambulance for complaints of constipation, abdominal pain, and no bowel movement for one week. He was noted by the CNMC ER nurse to be anxious and hyperventilating. H.W. was evaluated by attending Pediatric ER physician Dr. Moshen Saidinejad and was prescribed Miralax; H.W. was given two Fleet enemas with partial results; discharge instructions were given to his mother, and H.W. was discharged home.

33.     During H.W.'s May 17, 2014 visit to the CNMC ER at United Medical Center, another CNMC pediatric ER physician, Dr. Sephora N. Morrison, ordered that an Orasure HIV oral swab test to be performed on H.W.

34.     On September 10, 2014, H.W. returned again to see NP Payton at the Unity Health Care clinic, specifically requesting an "STD [sexually transmitted diseases] check-up." Her notes documented that H.W. was sexually active with two female partners, with only

9

"intermittent use of protection." His sexual history, however, which was updated also, indicated that H.W.'s sexual partners were also "male."

35.     NP Payton ordered urine for chlamydia and gonorrhea and an HIV finger-stick test was performed, which was negative.

36.     NP Payton once again failed to order or recommend testing for syphilis on H.W., despite knowing his risk factors and history including history of YMSM since at least March of 2013; he now had at least two confirmed new, female sexual partners; and he admitted to only intermittent use of protection during his sexual encounters.

37.     Nine days later, on September 19, 2014, H.W. returned again to the Unity Health Care Clinic and was evaluated by Nurse Practitioner ("NP") Alicia Baker. H.W. was complaining of a headache and recent runny nose. His sexual history was updated by NP Baker. Once again, it was documented that H.W.'s sexual partners were male. His number of sexual partners in the past twelve months was listed as two.  Despite his known history and risk factors, NP Baker did not recommend nor order that H.W. undergo any testing for STI, including syphilis, on this date.

38.     Two days later, H.W. was taken by car to the Children's National Medical Center Emergency Room at United Medical Center (hereinafter "CNMC ER") on September 21, 2014. His Chief Complaint at Triage was a headache for three days, abdominal pain, sore throat, pain when he eats, and fever. Dr. James F. Martin evaluated H.W., as did Pediatric Emergency Medicine CNMC ER attending physician Eiman Abdulrahman, M.D.

39.     On examination on September 21, 2014, H.W.'s throat revealed moderate erythema with exudate, and his tonsils were enlarged two to three-plus (2-3+). He also had

10

submandibular lymphadenopathy with mild tenderness. A Group A streptococcal [Rapid Strep Test] throat swab was performed, which was negative for Group A streptococcus antigen detection.

40.     Dr. Martin and Dr. Abdulrahman diagnosed H.W. with presumptive streptococcal pharyngitis, due to the throat exudate, fever and lack of URI (upper respiratory infection) symptoms.

41.     Dr. Martin prescribed ibuprofen 600 mg orally every six hours as needed for pain, and an oral antibiotic: Penicillin V potassium, 500 mg orally twice per day for ten days.

42.     Two days later, in the early morning of September 23, 2014, H.W. was brought by ambulance to the CNMC ER at United Medical Center. His Chief Complaint in Triage was a headache which had started "two days ago seen in the Emergency Department on September 21, 2014 sent home with an Rx of IBU [Ibuprofen] 400 mg [sic] last dose (administered) last night at 1900. Pain 8/10." His initial temperature in the CNMC ER was 101.3 degrees F.

43.     Pediatric ER physician Alexandra C. Rucker examined H.W. on September 23, 2014, noting four days' history of fever, headache, sore throat, and abdominal pain, with maximum temperature of 102. He was complaining of dizziness when standing/walking on this date. On examination, his mucous membranes were dry; his tonsils were enlarged "3+, erythematous with exudate and "?ulcer."

44.     Dr. Rucker's differential diagnoses were strep pharyngitis, viral syndrome with dehydration and migraine, and meningitis, 'less likely.'

45.     Dr. Rucker ordered a repeat Group A streptococcus Antigen test swab from the throat; a CBC; BMP; and a Mono Spot test (a Heterophile Antibody test) to check for

11

mononucleosis. The Group A streptococcus Antigen test and the Heterophile Antibody test were both negative.

46.     Dr. Rucker received the results of the Group A.  Therefore, Dr. Rucker knew or should have known that H.W. likely did *not* have either a Group A streptococcal throat infection *or* Mononucleosis as the cause of his fevers, headaches, submandibular lymphadenopathy, and his throat erythema, tonsillar, exudate, and "?ulcer."

47.     Dr. Rucker did not test H.W. for any STI including HIV or syphilis, nor did he take any steps to rule out meningitis.

48.     Dr. Rucker diagnosed H.W. with "Migraine headache" and Fever without a source, and prescribed ibuprofen and Tylenol for fever and throat pain. She discontinued the antibiotic Penicillin V potassium, prescribed two days earlier prior in the same emergency department.

49.     Six days later, on September 29, 2014, H.W. presented for the third time to the CNMC ER at United Medical Center. The incomplete history noted that H.W.'s complaints were a headache, fever for three days, and a pain level of 8/10.

50.     On September 29, 2014, attending Pediatric ER physician Dr. Moshen Saidinejad evaluated H.W. He noted H.W.'s headache, as well as 3 episodes of emesis in the past three days 'but no fever [*sic*] or vomiting' [*sic*].  On exam, H.W. had a dry tongue and mucous membranes. However, Dr. Saidinejad did not document a visual inspection of H.W.'s posterior pharynx.

51.     Dr. Saidinejad ordered no diagnostic testing, or lab tests; and did no tests.

52.     Dr. Saidinejad merely treated H.W.'s symptoms, ordered medications for headache, intravenous fluids and discharged him on September 29, 2014 with a diagnosis of

12

"unspecified headache, Migraine Headache."

53.     Apparently, Dr. Saidinejad recognized that neurologic disease might be a cause of H.W.'s symptoms.

54.     Dr. Saidinejad's instructions were for H.W. to follow up with his primary care physician in five days -- on 10/4/14 -- and to call the Neurology Clinic for a "follow-up" appointment.

55.     Dr. Saidinejad negligently failed to rule out an acute medical condition as a cause of H.W.'s symptoms.

56.     One day later, on the morning of September 30, 2014, H.W. presented a fourth time to the CNMC ER at United Medical Center with complaints of "head, stomach pain for 2 weeks now, + fever. Pt last seen here last Friday and yesterday. Patient seen here for the fourth time" per Triage nursing notes. H.W.'s pain was severe at this time at 10/10. H.W. was further noted by the ER nurse to have vomited that morning, with mid-epigastric pain and RLQ (right lower quadrant) pain on palpation.

57.     Pediatric Emergency physician attending Joanna Susan Cohen evaluated H.W. on September 30, 2014. She noted H.W. had a headache for the past eleven days, noting that he had *no* prior history of migraine headaches. Dr. Cohen documented that this was H.W.'s fourth visit to the CNMC ER; she noted his history of vomiting, severe diffuse headache and abdominal pain; and his negative strep test. She noted that H.W. had been treated for strep throat, despite the negative strep tests. She wrote that, "On the 3rd [CNMC ER] visit, patient was also treated with the migraine pathway, but no testing was done."

58.     Dr. Cohen incorrectly noted that "He has not had a documented fever either here

13

or at home...Patient attends Eastern HS (High School) and plays football and is a drummer in the marching band." Dr. Cohen's exam of H.W.'s throat noted: "Throat: bilateral; moderate, pharynx and erythema." His abdomen revealed moderate diffuse tenderness and guarding.

59.     On September 30, 2014, Dr. Cohen's differential diagnoses included "viral syndrome." A Head CT was done, which was negative for any pathology to explain his headaches. Medications for migraine headache were given. Patient care was transitioned to CNMC ER physician Rajesh Kirit Daftary the afternoon of September 30, 2014.

60.     Neurology was called on September 30, 2014; because H.W.'s pain had improved with medications, they recommended follow-up later in the Neurology Clinic "within 2-4 weeks."

61.     No Lab tests were ordered for H.W. on September 30, 2014 by the CNMC ER physicians at United Medical Center.

62.     Again, Defendant CNMC employees and agents negligently discharged H.W. on September 30, 2014, despite four CNMC ER visits within nine days, and no medical explanation for his fevers, headaches, vomiting, submandibular lymphadenopathy, diffuse abdominal pain, and abnormal throat exam findings, other than an unknown, possible "viral syndrome."

63.     On October 3, 2014, H.W. was taken for his fifth and final visit to the CNMC ER at United Medical Center. He was triaged at 16:07 with complaints of dehydration, stomach pain, fever on and off for 2 weeks, anxiety, and inability to take oral fluids for two days. His pain level was again 10/10. His history again included episodes of vomiting and nausea. He had acute abdominal pain in all quadrants.

64.     On the afternoon of October 3, 2014, CNMC pediatrician Dr. Robert Feltner

14

examined and evaluated H.W.  He documented persistent vomiting for 2 days; abdominal pain,
and inability to take anything by mouth. H.W.'s mucous membranes were dry. There was no
documentation of the appearance of H.W.'s throat during this visit on October 3, 2014. Bowel
sounds were high pitched, with moderate, generalized abdominal pain. Dr. Feltner ordered
certain blood tests, including a CBC, which revealed an elevated White Blood Cell count of 11.8
[reference ranges 3.8 to 9.6].

65.    Dr. Feltner ordered IV fluids, IV Morphine, IV Zofran, as well as ketorolac for
H.W.'s severe headache.

66.    Despite this being H.W.'s fifth visit to the CNMC ER at United Medical Center
within the past twelve days, with no medical explanation for his signs and symptoms, nor
resolution of his worsening signs and symptoms, Dr. Feltner nevertheless planned to discharge
H.W. home on October 3, 2014.

67.    At approximately 20:42 on 10/3/2014, a "Re-examination/Re-evaluation" Note,
authored by Dr. Feltner, stated "Course was planning on discharge but became lightheaded and
nauseous." An "Addendum" Note at 21:30, likewise authored by Dr. Feltner, said: "Events
subsequent to last entry: After patient became faint on standing started [IV fluids] and got lab
studies which revealed elevated liver enzymes and bilirubin. Arranged for admission for
management of hepatitis. While awaiting transport patient had a sudden stiffening of entire body
and tachycardia to the 140's. Event lasted about 45 seconds. He then went back to baseline.
During sign out to [CNMC ER] Dr. Smith he had another sudden spasm of stiffening and
complained of severe stabbing abdominal pain. Additional labs were obtained looking for any
evidence of heart disease. EKG was also obtained."

15

68.     A Note by CNMC ER Nurse M. Genett stated that H.W. had been given two (2) IV fluid boluses without feeling much better. When CNMC tried to discharge H.W., he stood up and passed out. Further lab work revealed that H.W. had elevated liver enzymes and bilirubin and the plan was to admit H.W. to the hospital. It was noted that "this is his 6th visit [sic] to UMC for similar symptoms."

69.     At 23:00 on October 3, 2014, CNMC ER physician Sophia Renya Smith assumed care of H.W. from Dr. Feltner. H.W. was still awaiting transport to the CNMC main campus hospital at this time.

70.     Dr. Sophia Smith ordered an "Orasure HIV Screen" oral swab test on October 3, 2014 at 23:34 while H.W. was still in the CNMC ER at United Medical Center.

71.     On October 4, 2014, the CNMC ER staff at Unity Medical Center learned that H.W. tested positive for HIV *before* 03:00.

72.     A Note by Nurse M. Genett on October 3, 2014 at 23:45 stated that "Pt had seizure like activity while waiting for transport. Will come to ED [Emergency Department] for eval prior to going to the floor."

73.     H.W. was transported to the CNMC ER main campus in the early morning of October 4, 2014, and an untimed Note by the CNMC main campus ER physician Dr. Erin Marie Augustine stated, in part, that: "Assessment Updated from UMC that patient had positive Orasure and positive confirmatory test. Admitting resident notified."

74.     After receiving the news about H.W.'s diagnosis of HIV infection, Dr. Augustine's Impression was "HIV infection" and vomiting. At 03:00, a call was made to admit H.W. to the "Silver" *i.e.*, Hospitalist service; the attending physician was listed as Gabrina

16

L. Dixon, M.D.  H.W.'s condition was noted to be "Stable" at this time by Dr. Augustine.

75.     At 03:00 on October 4, 2014, another Note by Dr. Augustine stated, in part, that "Patient was initially going to be a direct admit, but he had an episode of strange movements prior to transfer so was sent to CNMC ED before admission. Mom described strange movements consisted of tensing of upper and lower extremities X [times] seconds. No change in mental status, normal behavior after event."

76.     H.W. was admitted to the floor of the CNMC main campus hospital in the early morning hours of October 4, 2014. At 13:58 on this date, Pediatric Resident Gillian Abrams ordered Neurological Checks to be done every 4 hours due to H.W.'s experiencing multiple shaking episodes of his upper and lower extremities and tachycardia during such episodes.

77.     Pediatric Resident Gillian Abrams ordered an RPR and another test for syphilis and HIV to be drawn on October 4, 2014 at 6:00 p.m.

78.     During the last full day of his life on October 4, 2014, H.W. continued to have multiple severe shaking episodes involving his upper and lower extremities, accompanied by tachycardia. The CNMC physicians caring for him on this date did not include in their differential diagnosis that his neurological signs may have been due to neuro-syphilis.

79.     Rather, they suspected he was having a psychiatric 'conversion disorder' due to his new HIV diagnosis; they ordered a psychiatric consult at 14:30 on October 4, 2014; they taught him deep breathing techniques; gave him IV Valium on the morning of October 4, 2014; and ordered Valium tablets three times a day, as needed, for "spasm," according to the Order at 14:17 on October 4, 2014.

80.     During the evening of October 4, 2014, H.W. suffered repeated episodes of

17

tremors/shaking, including full body shaking, tachycardia, as well as some urinary incontinence on the day and evening shifts.

81.     Nurse Meredith Graves contacted Resident Dr. Rachelle El Helou multiple times regarding these episodes during the evening of October 4, 2014 to the early morning hours of October 5, 2014.

82.     Dr. El Helou was contacted to perform a rapid Assessment of H.W. at approximately 23:00 on October 4, 2014, because H.W. had a PEWS [Pediatric Early Warning] Score of 3, due to his heart rate of 140.

83.     Dr. El Helou assessed H.W.; her Note, timed at 01:40 on October 5, 2014, stated in part that her Impression and Plan were: "Panic attack with carpopedal spasm. Practiced deep breathing exercises at bedside to slow down his respiratory rate...."

84.     Dr. El Helou provided H.W. with a paper bag to breathe into during his shaking attacks, "to prevent carpopedal spasm." The "Expected Outcome" for this Plan was that H.W.'s heart rate would be "less than 100" within one hour. The "Escalation Plan If Outcome Not Met By Deadline" was: "Contact Primary Resident."

85.     Nurse Graves's Note at 02:07 on October 5, 2014, asked Dr. El Helou to come assess H.W. because H.W. was "having another episode." Dr. El Helou responded that she was "Contacting second year [Resident] to come up with plan." At 02:11, Nurse Graves wrote to Dr. El Helou: "Bring senior residents with you," to which Dr. El Helou wrote: "On phone with seniors."

86.     At 02:10 on October 5, 2014, a "CAT" (Clinical Assessment and Triage Team) was documented to have been initiated by a nurse. The CAT Team arrived at 02:20 on October

18

5, 2014. In addition to H.W.'s body shaking and tachycardia, he was suffering oxygen desaturations, according to a note by Dr. Joanna Tylka, who was one of those who responded to the 02:10 "CAT" call by the nurse.

87.     Dr. Tylka's Note concerning the CAT and subsequent Code on the morning of October 5, 2014, stated, in part, that when she entered the room, H.W. was experiencing tremors of all 4 extremities; he was tachypneic; he was verbally responsive; with oxygen saturations via pulse oximeter between 85 and 99% on a non-rebreather mask. The CAT responders spent the ensuing approximately 10 minutes [from 02:20 and 02:30, when a Code was called] using unnamed "calming" techniques to try to lower his heart rate. H.W. asked that the oxygen mask be removed; it was removed; and Dr. Tylka noted that H.W. became bradycardic to the 40's [forties], became unresponsive, and his tremors stopped.

88.     The Code on H.W. was initially called at 02:30 and he was pronounced dead at 03:23 on October 5, 2014.

89.     On October 6, 2014, an autopsy was performed on H.W. by the Office of the Chief Medical Examiner of Washington, D.C. The Cause of Death was determined to be: Sudden Death due to Myocarditis and Cerebral Vasculitis Complicating Syphilis Infection. The pathologist noted that hospital testing had revealed a positive Florescent Treponemal Antibody (FTA-ABS) IgG. Microscopic analysis of H.W.'s brain by the pathologist who performed the autopsy revealed, in part, "Special stains focal positive for spirochetes. Control stains satisfactory." The contributing Cause of Death was listed as Human Immunodeficiency Virus Infection.

19

## ALLEGATIONS OF NEGLIGENCE

### COUNT I
*(Medical Negligence – Survival Action)*

Plaintiff repeats, reiterates, and alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

90.     Plaintiff makes a claim for all damages recoverable under the D.C. Survival Action Statute against Defendants USA and Children's National Medical Center, and under the Federal Tort Claim Act, against Defendant USA, such claims having been made in a timely manner and with timely and appropriate notice.

91.     Defendant USA, acting individually and through its employees and agents, apparent, real and ostensible, had a duty to provide care and treatment to H.W. consistent with the standard of care.

92.     Defendant USA, acting individually and through its employees and agents, including NP Douglas, NP Payton , NP Baker and Dr. Hendje breached their duty of care owed to H.W. from March 19, 2013 until the date of his death by:

> a.     Negligently failing to take an appropriate medical history, sexual history;
>
> b.     Negligently failing to appropriately examine and evaluate H.W.;
>
> c.     Negligently failing to include infection with STD's in Differential Diagnoses;
>
> d.     Negligently failing to timely order full STD testing on H.W., including testing for HIV, syphilis, chlamydia and gonorrhea;

20

e.      Negligently failing to advise and counsel, and failing to document
such counsel and recommendations, that H.W. was in a high risk
category for STD's, including HIV and syphilis, and as such he
needed to undergo thorough testing for the above-referenced
sexually transmitted diseases;

f.      Negligently failing to recommend STD testing to include syphilis
and failure to document the advice, counsel and recommendation;

g.      Negligently failing to follow up and contact H.W. to inquire as to
his health status after September 19, 2014, especially when the
Unity Health Care Clinic employees received copies of
information regarding H.W.'s September 2014 visits to the CNMC
ER at United Medical Center as respects his various presumptive
diagnoses there; and

h.      The Defendants were otherwise negligent.

93.      Defendant Children's National Medical Center, acting individually and through
its employees and agents, apparent, real and ostensible agents and employees, including but not
limited to James Martin, M.D., CNMC ER physician Alexandra C. Rucker, M.D., Moshen
Saidinejad, M.D., Joanna Susan Cohen, M.D. and Robert Feltner, M.D. were negligent in their
attention, care and treatment of H.W., including but not limited to the following particulars:

a.      Negligently failing to obtain an appropriate, complete and accurate
medical and sexual history;

b.      Negligently failing to include infection with STD's, including but

21

not limited to HIV and syphilis, in their Differential Diagnoses, especially in light of H.W.'s abnormal throat findings and questionable throat ulcer, his second, negative Rapid Strep Test, and negative Mononucleosis Spot test;

c. Negligently failing to also include in their Differential Diagnoses a Primary Retroviral Syndrome, *i.e.,* acute HIV infection, in this young African American male who lived in Washington D.C., which city was well known and documented to be experiencing an increase in HIV and syphilis infections in its residents;

d. Negligently failing to contact H.W.'s primary care treaters at Unity Health Care Clinic to obtain more information;

e. Negligently failing to order testing for STD's, including testing for HIV and syphilis;

f. Negligently failing to appropriately inspect and document the appearance of H.W.'s throat;

g. Failing to take a thorough and adequate history regarding H.W.'s prior CNMC ER visits;

h. Failing to accurately document and consider the fact that H.W. did, in fact, have a documented fever during his past CNMC ER visit on 9/23/14, for which no etiology was found;

i. Having procured a Head CT which was did not explain his worsening and persistent headaches and other signs and symptoms,

22

failing to include in Differential Diagnoses that H.W. could have another neurological condition;

j. Negligently failing to rule out meningitis which was on the differential diagnosis;

k. Negligently failing to recognize and appropriately respond to the fact that a patient presenting multiple times CNMC ER within days should have raised a red flag, requiring admission and more thorough evaluations and testing, including performing a lumbar puncture; an Infectious Diseases Consultation; and other testing;

l. Failing to appropriately examine and evaluate H.W., including performing an inspection of his throat;

m. Failing to order a Stat Neurological Consult on H.W. when H.W. experienced upper and lower extremity rigidity and shaking, with a syncopal or near-syncopal episode;

n. Failing to recognize that some of H.W.'s signs and symptoms, especially his neurological signs and symptoms, could be due to a significant neurological problem;

o. Failing to obtain an infectious diseases consult on H.W.;

p. Negligent misdiagnosis of seizures as panic attacks; and

q. The defendants were otherwise negligent.

94.   As a direct and proximate result of the aforesaid negligence of all Defendants, the Plaintiff's decedent, H.W.'s, HIV and syphilis infections were not timely diagnosed and went

23

untreated.

95. As a direct and proximate result of the aforesaid negligence of all Defendants, the Plaintiff's decedent, H.W., suffered worsening of his acute HIV infection and worsening of his syphilis infection, which proximately caused neuro-syphilis, myocarditis, and his death.

96. Defendants' negligence was a substantial factor and a proximate cause of Plaintiff's decedent, H.W.'s, conscious pain and suffering which persisted and worsened until he was pronounced dead at 03:23 on October 5, 2014.

97. Defendants' negligence was a substantial factor and proximately caused H.W.'s estate to incur funeral expenses and financial losses, including future lost wages; the cost of reasonable and necessary medical and hospital expenses; and is entitled to receive reasonable compensation for bodily injuries, mental anguish, disabilities, disfigurement and/or deformities, and inconvenience and discomfort experienced by H.W. between the time of the injury and the time of his death.

WHEREFORE, Plaintiff Monique Williams, demands judgment, jointly and severally against the Defendants as compensatory damages in the full sum of Fifteen Million Dollars ($15,000,000.00), plus costs and interest.

## COUNT II
### *(Medical Negligence - Wrongful Death)*

Plaintiff incorporates by reference the allegations set forth in the foregoing paragraphs, as if fully set forth herein.

98. Plaintiff makes a claim for all damages recoverable under the D.C. Wrongful Death Statute against Defendants USA and Children's National Medical Center and under the

24

Federal Tort Claim Act, such claims having been made in a timely manner and with timely and appropriate notice.

99.     Due to the negligence of Defendants USA and Children's National Medical Center, which was a substantial factor, a direct and proximate cause of H.W.'s death, the Plaintiff's decedent, H.W., died.

100.    As a direct and proximate result of the negligence of the Defendant USA and Children's National Medical Center, the beneficiaries of Plaintiff's decedent have been injured and damaged, including, but not limited to the following particulars:

> (a) Expenses of his last illness, funeral, and burial and any other expenses of the decedent H.W.;
>
> (b) Expenses of medical and hospital care;
>
> (c) Financial support;
>
> (d) Lost future wages;
>
> (e) The value of lost support, services, advice, care, attention, counsel, guidance, comfort and society as a result of H.W.'s untimely death; and have been otherwise injured and damaged.

WHEREFORE, Plaintiff, Monique Williams, demands judgment against the Defendants, in the full sum of Fifteen Million Dollars ($15,000,000.00), plus costs and interest.

25

Respectfully submitted,

September 28, 2016
Date

*/s/ Karen E. Evans*
Karen E. Evans          #426067
THE COCHRAN FIRM
1100 New York Avenue, N.W.
Suite 340, West Tower
Washington, DC 20005
(202) 682-5800
Kevans@cochranfirm.com
*Attorney for Plaintiff*

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury as to all issues so triable.

*/s/ Karen E. Evans*
Karen E. Evans

26