# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MONIQUE WILLIAMS,

    Plaintiff,

        v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

Civil Action No. 17-445 (JDB)

## MEMORANDUM OPINION & ORDER

Plaintiff Monique Williams has brought medical negligence claims against Children's National Medical Center ("CNMC") and the United States of America following the death of her teenaged son, H.W., from complications of HIV and syphilis infections at CNMC in October 2014. Under this Court's most recent discovery order, the Court allowed discovery of textual and audiovisual data—but not location data—from the decedent's locked cell phone. Dec. 6, 2018, Order [ECF No. 41] at 3. That order noted that defendants could move to expand discovery to include location data if they could show that discovery of location data met five criteria. Id. Defendants have filed a motion seeking location data from H.W.'s cell phone from August 27, 2014, through the date of H.W.'s death. Mot. to Extend Search of Cellphone to Include Limited Location Data ("Defs.' Mot.") [ECF No. 42]; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply") [ECF No. 45] at 6. Plaintiff objects. Opp'n to Defs.' Mot. ("Pl.'s Opp'n") [ECF No. 44]. This issue has now been fully briefed and is ripe for resolution.

The scope of discovery generally includes that which "is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of," inter alia, "the parties' relative access to relevant information, the parties' resources, the importance of discovery

in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). It is the "duty and discretion of a trial court to oversee the discovery process." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 31 (1984). Rule 26 of the Federal Rules of Civil Procedure "vests the trial judge with broad discretion to tailor discovery narrowly." Crawford-El v. Britton, 523 U.S. 574, 598 (1998). Pursuant to the December 6, 2018, discovery order, the Court will consider the evidence the parties have presented on whether location data "is (1) recoverable, (2) relevant, (3) necessary, (4) accessible through reasonable means with respect both to cost and to effort, and (5) susceptible to reasonable limitations to mitigate the significant privacy concerns triggered by discovery of such data." Dec. 6, 2018, Order at 3. Defendants have persuasively argued that the location data is recoverable, accessible through reasonable means, and relevant, but not that this data is necessary or that limitations exist that would mitigate the Court's privacy concerns. For the reasons that follow, the Court concludes that, considered together, the factors weigh against granting the discovery request, and, hence, the motion will be denied.

The Court concludes that CNMC has demonstrated a good faith belief that the location data is recoverable. Plaintiff argues that CNMC's data recovery specialist has not yet unlocked or "cracked" the phone, and therefore no one can be certain that the location data exists or is recoverable. Pl.'s Opp'n at 3–5. However, the data recovery company asserts that it has the technological "ability to extract location data that may be contained in application on the phone based on the user settings." Sept. 10, 2018, Letter from KLDiscovery, Ex. 4 to Pl.'s Opp'n [ECF No. 44-4]. The Court is satisfied that, to the extent such location data exists, CNMC has identified a company with the technological capability to access this material, and thus there is reason to believe that such data is recoverable.

Relatedly, CNMC has demonstrated that the location data is accessible through reasonable means with respect both to cost and to effort. CNMC notes that the same data recovery process that will be applied to recover textual and audiovisual data could recover location data, with an additional effort of 3 to 6 hours of technician time and at a cost of approximately $1,125 to $2,250. Defs.' Mot. at 3. Defendants would "pay any and all costs associated with extrapolating the location data." Id. Plaintiff notes that the 3-to-6-hour estimate does not account for attorney time that will be spent reviewing any recovered location data. Pl.'s Opp'n at 12.[1] The Court concludes that 3 to 6 hours of time is reasonable, that direct discovery costs would not unfairly fall on plaintiff, and that the additional time expended reviewing such data does not render CNMC's request unreasonable.

The Court also agrees with CNMC that the location data is relevant. "To be relevant, evidence must have the tendency to make 'the existence of [a fact] . . . more probable or less probable than it would be without the evidence.'" United States v. Moore, 732 F.2d 983, 994 (D.C. Cir. 1984) (quoting Fed. R. Evid. 401). CNMC asserts contributory negligence as a defense in this medical malpractice case, and CNMC argues that location data from H.W.'s phone from late August 2014—the time that he was likely infected with HIV—until his death in October 2014 could reveal how H.W. contracted HIV; provide further evidence of H.W.'s condition in the weeks leading up to his death, including whether he felt well enough to leave his home; or demonstrate that H.W. sought additional testing for sexually transmitted diseases ("STDs"). Defs.' Mot. at 2;

---

[1] Plaintiff also notes that fact discovery is scheduled to close at the end of March 2019 and accuses defendants of "dilatory conduct" and of filing the instant motion as a way to cause "deliberate delay" in discovery, which plaintiff argues should weigh against the reasonableness of the effort to be expended. Pl.'s Opp'n at 1, 12. Defendants object to this characterization and attribute any delays to the contentiousness of the discovery process in this case as well as the month-long government shutdown that essentially halted defendants' ability to participate in discovery. Defs.' Reply at 2–3. The Court finds no reason to believe that defendants moved to extend discovery of the cell phone in bad faith or to delay proceedings, and hence plaintiff's accusations of "dilatory conduct" do not weigh in the Court's analysis of the present motion.

Defs.' Reply at 5.  Plaintiff avers that her claims are based on what defendants "actually knew as documented in their medical records," and thus location data collected after the fact "will not support a defense to these claims." Pl.'s Opp'n at 10–11.

The Court concludes that CNMC has shown that location data <u>could</u> shed light on H.W.'s condition in the weeks leading up to his death or lead to evidence that H.W. had more information about his condition than he shared with providers.  Location data would not change the mix of facts that H.W.'s medical providers knew at the time they treated him, but this data might provide additional information on the decedent's knowledge of his condition, which in turn would make CNMC's defense of contributory negligence more or less probable.  Hence, location data is relevant to the claims and defenses in this case.

Defendants' arguments that the location data is necessary are less persuasive.  Defendants argue that location data "is necessary . . . for the same reason[s] as all of the other information on the phone" and that "location data may either establish independently or corroborate other data on the phone" that would tend to show H.W.'s contributory negligence.  Defs.' Reply at 5–6. Defendants suggest that location data will be probative of three main issues: (1) determining where and how (by sexual contact, drug use, etc.) H.W. contracted HIV, (2) determining whether H.W.'s illness kept him at home on the days he missed school and was not at the hospital, and (3) whether H.W. sought out other treatment or testing that would have caused him to have more information about his HIV status than he reported to CNMC staff.  As to each of these issues, the Court finds that location data either would simply be cumulative, could be obtained from other sources, or would not be proportional to the needs of the case.  <u>See</u> Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i).

As to the first issue, defendants argue that location data is necessary because "there is no other means of obtaining . . . relevant information" about H.W.'s last months of life because

4

deposed family members and friends "have denied any knowledge of H.W.'s sexual orientation, practice, partners and almost all of his personal life." Defs.' Mot. at 2–3. Defendants will have access to textual and audiovisual materials recovered from the cell phone, evidence that will address defendants' questions about H.W.'s personal life in the months before his death in a more direct manner than what cell tower data would provide. Because cell tower location data would not reveal, in itself, what H.W. was doing in the areas he visited over a four-month period, this data is less probative than other materials that the phone is likely to contain and seems likely only to corroborate other information collected from the phone. And plaintiff notes that other records show that H.W. "reported having sex with males" to health providers at a clinic at his high school and that he asked these providers "for STD testing." Pl.'s Opp'n at 5. Hence, location data is not necessary to develop these facts.

As to the issue of H.W.'s physical condition in the weeks before his death, location data has little probative value in relation to evidence already available to defendants. Plaintiff urges that location data is "cumulative and duplicative" of other evidence, particularly since other records make clear that H.W. left home at least seven times in the two weeks preceding his death, including five visits to the emergency room, one visit to his mother's house, and one day that he attended school. Pl.'s Opp'n at 5, 11. Deposed eyewitnesses and hospital records describe his physical appearance during this time. Showing that the cell phone did or did not leave H.W.'s house over these weeks adds little if anything to these more substantive sources of evidence.

Third, defendants seek location data to test whether H.W. "visited other medical locations, including those in Prince George's County, Maryland, and received additional testing for STDs, showing that HW had some knowledge of his exposure to HIV that he denied to" his medical providers. Defs.' Reply at 5. However, defendants are already aware that H.W. sought testing for

STDs in the weeks before his death. According to plaintiff's complaint, H.W. was tested for HIV during a May 2014 visit to the CNMC emergency room. Compl. [ECF No. 1-1] ¶ 33. H.W. then tested negative for HIV, gonorrhea, and chlamydia at a visit to a clinic at his high school on September 10, 2014. Id. ¶¶ 34–36. H.W. returned to that same clinic nine days later, on September 19, complaining of a headache, then appeared in the CNMC emergency room five times in the days that followed—on September 21, 23, 29, 30, and October 3. Id. ¶¶ 37–39, 42–43, 49–50, 56–57, 63–64. H.W. died on October 5, 2014—less than a month after he last tested negative for HIV. Id. ¶ 88. H.W. sought medical care from two provider locations, and he willingly submitted to HIV testing at both locations. Defendants have provided no reason to believe that H.W. received additional STD testing at other, unfamiliar locations while also repeatedly seeking care at the two facilities already known to defendants. Instead, what defendants seek is essentially a "fishing expedition." United States v. Kellogg Brown & Root Servs., Inc., 284 F.R.D. 22, 36–37 (D.D.C. 2012). Without more context, the Court has no reason to believe that location data is likely to lead to evidence of additional testing or that location data would otherwise be particularly probative of the issues presented. Moreover, to the extent that defendants believe records of additional testing exist, defendants do not require location data because they may seek these records through subpoenas duces tecum from any providers they believe might have these records. Hence, location data is not necessary to develop any facts or support any claim or defense in this case.

The Court also continues to be troubled by "the significant privacy concerns triggered by discovery of such data," particularly in light of its minimal probative value. See Dec. 6, 2018, Order at 3. Rule 26(b)(1) provides that discovery should only be permitted to the extent that the likely benefit of such discovery outweighs its burden. Here, any minimal value defendants might

6

derive from the location data does not outweigh the risks inherent in disclosure, and the Court's privacy concerns remain largely unaddressed.

Defendants explain that location data is desirable, in part, because it "will at least put [H.W.] in certain locations," and

> [t]he defense can then investigate those locations, who frequents them, [and] what happens there, in an effort to determine how/when/from whom HW contracted HIV. To the extent any sexual activity and/or drug use occurred, that is incredibl[y] helpful to the defense since HW repeatedly denied any such behavior to CNMC's staff.

Defs.' Mot. at 2. Plaintiff accuses defendants of seeking "lurid details of the teenaged decedent's sex life" and notes that "HW's privacy is not the only privacy right" at issue in this case, as the investigation into how and from whom H.W. contracted HIV necessarily implicates "anyone HW may have interacted with" in the months before his death. Pl.'s Opp'n at 9–10. Defendants respond that the request is limited to a period of a few months, that "[a]ny privacy concerns are . . . mitigated by the existence of a protective order in this case," and that plaintiff's counsel's right to preview recovered information before turning it over to defendants will serve as a check on the disclosure of private information. Defs.' Mot. at 3; Defs.' Reply at 6.

The Court concludes that the privacy implications of using cell phone location data to track a deceased teenager's movements to determine how he became infected with HIV—whether through sexual contact with third parties or drug use—are significant. True, concerns about the <u>decedent's</u> privacy are mitigated to some extent by the fact that plaintiff has waived some confidentiality rights by bringing this lawsuit. Defs.' Reply at 5. However, the people with whom H.W. may have interacted in the months before his death—whether HIV-positive or not—have not waived their privacy rights. As noted by defendants, the location data is only useful insofar as it may provide a springboard for further investigation; location data, in itself, will not reveal

7

"how/when/from whom HW contracted HIV." Defs.' Mot. at 2. Any subsequent investigation might entail publicly disclosing private information, either explicitly or impliedly through a line of questioning. For example, if defendants were to knock on the door of a former classmate of H.W. and explain to the classmate's mother that they are seeking information about why a now-deceased teenager "frequented" their home in the months before his death, such an investigation would not only threaten to reveal H.W.'s confidential information, including his HIV status, but would also threaten the privacy interests of the classmate with respect to that classmate's HIV status, sexual preferences and practices, or drug use history. Such an investigation invites conclusions to be drawn about the most private aspects of the lives of H.W. and these third parties—whether correctly or incorrectly—based on whether they reside at or "frequent" certain locations. Defendants have identified no measures to mitigate potential harms to such privacy interests. The existence of a protective order in this case, which requires the parties to protect confidential or private information "from public disclosure and from use for any purpose other than prosecuting and/or defending" this case, Stipulated Protective Order [ECF No. 24] at 1, does not allay the Court's concerns. Defendants have suggested no procedure by which they would "investigat[e] locations, who frequents them, [and] what happens there" without directly or indirectly disclosing private information.[2] And similarly, it is not clear how plaintiff's counsel's review of location data before releasing it to defendants would adequately protect confidential information from disclosure, especially if the relevance of location data is only apparent after further investigation of these locations. Hence, the Court continues to have significant concerns

---

[2] Textual and audiovisual materials recovered directly from the phone also raise privacy concerns, but these concerns are mitigated by the fact that these textual and audiovisual materials are in a format more susceptible of protection from public disclosure under the protective order in this case. Furthermore, the Court's concerns about privacy are balanced by the likelihood that these materials will contain evidence that is directly probative of material issues in dispute in this case.

about the privacy interests implicated by discovery of such data, which counsels against allowing such discovery to proceed.

Defendants have not satisfied the Court that discovery of location data is necessary or that such discovery is susceptible of limitation to mitigate the Court's privacy concerns. The probative value of location data does not outweigh the burdens that might be imposed on unrelated third parties, and ultimately the potential for harm is not proportional to the need for such evidence in this case. See Fed. R. Civ. P. 26(b)(1). The location data is also largely cumulative, and the information contained in such data can be obtained from other sources that are less burdensome on the privacy interests of H.W. and third parties. See Fed. R. Civ. P. 26(b)(2)(C)(i). Accordingly, it is hereby

**ORDERED** that defendants' motion to extend discovery to include location data from H.W.'s cell phone is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: March 25, 2019